**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:06CV191**

| | |
|---|---|
| **FAIRFIELD RESORTS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| **FAIRFIELD MOUNTAINS** ) | |
| **PROPERTY OWNERS** ) | |
| **ASSOCIATION, INC.,** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Temporary Restraining Order and Preliminary Injunction, filed August 18,

2006.[1]


## I. BACKGROUND

Plaintiff's motion for preliminary injunctive relief to prevent Defendant

from removing it or its property from property subject to certain leases

entered into by the parties was heard by the Court in June 2006. *See,*

_____

[1] Plaintiff's motion for a temporary restraining order was denied on
August 21, 2006, therefore, only Plaintiff's motion for a preliminary
injunction is currently before the Court. *See,* **Order, filed August 21, 2006
(denying motion for temporary restraining order).**

**Plaintiff's Motion for Preliminary Injunction, or, in the Alternative, Temporary Restraining Order, filed June 21, 2006 ("Plaintiff's June Motion").**  The Court denied Plaintiff's June Motion for a temporary restraining order but granted the motion for a preliminary injunction.  ***See, Order, filed June 22, 2006 (denying motion for a temporary restraining order); Fairfield Resorts, Inc. v. Fairfield Mountains Property Owners Association, Inc., 2006 WL 1889152 (W.D.N.C. 2006) (granting motion for a preliminary injunction).***  The facts relevant to the parties' relationship up to July 7, 2006, are set forth in the Court's Order granting Plaintiff's motion for a preliminary injunction and will not be repeated here.  ***See, id.***

At issue in this new motion for preliminary injunctive relief is the right to remove, change, modify, or replace existing signs located at Fairfield Mountains.[2]  ***See, Plaintiff Fairfield Resorts, Inc.'s Motion for***

_____

[2] The property formerly known as "Fairfield Mountains" was re-named "Lake Lure Beach & Golf Resort" at some time in the past, and was again re-named "Rumbling Bald Resort" in January 2006.  **See, Plaintiff Fairfield Resorts, Inc.'s Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiff's Memorandum"), filed August 18, 2006, at 4, 13.**  As the relevant documents executed by the parties in 1992 refer to the property as "Fairfield Mountains," and so as to avoid confusion in the event the title of the property has again been altered, the Court will refer herein to the

**Temporary Restraining Order and Preliminary Injunction ("Plaintiff's**

**Motion"), filed August 18, 2006.** In December 1992, Plaintiff and

Defendant entered into a settlement agreement to resolve certain claims

Defendant held against Plaintiff in its bankruptcy proceeding. ***See*, Exhibit**

**A, Fairfield Mountains Settlement Agreement, *attached to* Plaintiff's**

**Motion.** As part of the agreement, Plaintiff agreed to convey certain lands

to Defendant. ***See, id.*** Documents also indicate that as part of the

agreement Plaintiff retained an easement over the conveyed tracts of

property

> allowing [Plaintiff] to retain and reserve the exclusive right to
> maintain and/or modify all existing signs and add new signs at
> Fairfield Mountains for as long as Fairfield operates a sales
> office or management operation at what is presently known as
> Fairfield Mountains. . . . At such time that Fairfield discontinues
> such sales activities and operations, Fairfield shall assign its
> right to control signs to [Defendant]. For purposes of this
> paragraph, [Plaintiff] will be deemed to have discontinued
> operations if they do not have at least one person employed at
> Fairfield Mountains.

***Id.*** Plaintiff avers that it "currently employs numerous employees in sales

and management operation roles at Fairfield Mountains." **Plaintiff's**

**Motion, ¶ 4.**

───────────────────

property as "Fairfield Mountains." ***See*, Exhibit A, Fairfield Mountains
Settlement Agreement, *attached to* Plaintiff's Motion.**

On July 27, 2006, James Cain, Membership Manager for Defendant,

sent a letter to Fairfield District Vice-President Donna McElrath stating:

> As you are aware, at is regularly schedule meeting held on Monday, January 23, 2006, the Fairfield Mountains Property Owners Association ["POA"] Board of Directors approved changing the resort name from Lake Lure Golf & Beach Resort to Rumbling Bald Resort. In the coming weeks we will begin replacing the signs within the control of the [POA], which includes those signs located on our common areas and lots. If you wish to have any of the signs we will be replacing, please contact me by August 20, 2006 . . . in order for us to arrange for you to pick up the signs. If I do not hear anything from you by August 20, 2006, we will dispose of the signs.

**Exhibit B, Letter, dated July 27, 2006, from James Cain to Donna**

**McElrath,** *attached to* **Plaintiff's Motion.** Plaintiff responded by letter on

August 1, 2006, stating:

> Please be advised that pursuant to the parties' Settlement Agreement, which was executed and agreed by and between the POA and Fairfield Resorts, Inc. ("Fairfield") on December 9, 1992, the POA does not have the right to unilaterally remove Fairfield's signs. Specifically, subsection (e) of the "Exhibits To Fairfield Mountains Settlement Agreement" provides that signage at the Resort is subject to Fairfield's right "to retain and reserve the exclusive right to maintain and/or modify all existing signs and add new signs at Fairfield Mountains for as long as Fairfield operates a sales office or management operation at what is presently known as Fairfield Mountains." Accordingly, any attempts by the POA to remove Fairfield's signs are directly contrary to and in breach of the terms of the settlement Agreement.
>
> Demand is hereby made that, within five (5) days from the

date of this letter, we receive written confirmation of your intent
to honor the terms of the parties' Settlement Agreement and
that you will not remove any of the Fairfield signage at the
Resort.  In the event that such confirmation is not received, we
will have no choice but to take such action as we deem
necessary to preserve our rights under the Settlement
Agreement and at law.

**Exhibit C, Letter, dated August 1, 2006, from Timothy McMichael to James Cain, *attached to* Plaintiff's Motion.**  According to Plaintiff, Defendant did not respond to the August 1 letter.  **Plaintiff's Memorandum, at 7.**  On August 18, 2006, Plaintiff filed with this Court a motion for a temporary restraining order and a preliminary injunction, requesting that Defendant be enjoined "from removing, replacing or altering in any way signage subject to the provisions of the Settlement Agreement agreed to by the parties on December 9, 1992."  **Plaintiff's Motion.** Defendant's response thereto was filed August 25, 2006.  ***See*, Defendant's Memorandum in Opposition to Motion for Preliminary Injunction ("Defendant's Memorandum"), filed August 25, 2006.**

## II. LEGAL STANDARD

The decision to grant or deny interim injunctive relief is within the sound discretion of the district court. *See, Hughes Network Sys. v. InterDigital Commc'ns Corp.*, **17 F.3d 691, 693 (4th Cir. 1994).** "Granting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way. The danger of a mistake in this setting is substantial." *Scotts Co. v. United Indus. Corp.*, **315 F.3d 264, 284 (4th Cir. 2002) (citations and internal quotations omitted).** As such, a preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, **952 F.2d 802, 811 (4th Cir. 1992) (quoting** *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* **882 F.2d 797, 800 (3d Cir. 1989)).** "Whenever the extraordinary writ of injunction is granted, it should be tailored to restrain no more than what is reasonably required to accomplish its ends. Particularly is this so when preliminary relief, on something less than a full record and full resolution of the facts, is granted." *Consolidation Coal Co. v. Disabled Miners of S. W. Va.*, **442 F.2d 1261, 1267 (4th Cir. 1971);** *see*

*also*, *Anheuser-Busch, Inc. v. Stroh Brewery Co.*, 750 F.2d 631, 653 (8th Cir. 1984) ("Injunctions must be tailored narrowly to remedy the specific harm shown rather than to enjoin all possible breaches of the law.").

The Court applies a four-part balancing test to determine whether interim injunctive relief should issue. *Direx Israel, supra.* Under this balancing test, the Court must consider "'(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.'"[3] *Willis v. Town of Marshall*, 426 F.3d 251, 267 (4th Cir. 2005) (quoting *Direx Israel,* at 812)*; see also*, *Wetzel v. Edwards*, 635 F.2d 283, 287 (4th Cir. 1980). Although no one factor is generally dispositive,[4] the two

_____

[3] The Court is also guided by Fed. R. Civ. P. 65 which governs the procedural requirements attendant to the granting of injunctive relief. **Fed. R. Civ. P. 65;** *see also*, *Maryland Dep't of Human Resources v. United States Dep't of Agriculture*, 976 F.2d 1462, 1483 (4th Cir. 1992).

[4] A failure to show any risk of irreparable harm is sufficient grounds for denial of a motion for interim injunctive relief, as likelihood of success on the merits alone - without any showing of a risk of irreparable harm - is not sufficient to warrant the issuance of a preliminary injunction. *See,* *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).

most important are "probable irreparable injury to the plaintiff if an

injunction is not issued and likely harm to the defendant if an injunction is

issued." *Id.*

> When deciding whether to grant a preliminary injunction, the
> court must first determine whether the plaintiff has made a
> strong showing of irreparable harm if the injunction is denied; if
> such a showing is made, the court must then balance the
> likelihood of harm to the plaintiff against the likelihood of harm
> to the defendant. If the balance of the hardships tips decidedly
> in favor of the plaintiff, then typically it will be enough that the
> plaintiff has raised questions going to the merits so serious,
> substantial, difficult, and doubtful, as to make them fair ground
> for litigation and thus for more deliberate investigation. But if
> the balance of hardships is substantially equal as between the
> plaintiff and defendant, then the probability of success begins
> to assume real significance, and interim relief is more likely to
> require a clear showing of a likelihood of success.

*Scotts* **Co., 315 F.3d at 271 (internal quotations and citations omitted).**

When considering the harm to the parties flowing from the issuance or

non-issuance of the requested preliminary injunction, the real issue for the

Court's consideration is the level of harm resulting from the *improper* grant

or denial of the petitioner's request. *Id.,* **at 284.**

> "If the judge grants the preliminary injunction to a plaintiff who it
> later turns out is not entitled to any judicial relief – whose legal
> rights have not been violated – the judge commits a mistake
> whose gravity is measured by the irreparable harm, if any, that
> the injunction causes to the defendant while it is in effect. If the
> judge denies the preliminary injunction to a plaintiff who it later
> turns out is entitled to judicial relief, the judge commits a

> mistake whose gravity is measured by the irreparable harm, if
> any, that the denial of the preliminary injunction does to the
> plaintiff."

***Id*., at 284-85 (quoting *American Hosp. Supply Corp. v. Hospital***

***Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)).** The Court focuses on the

harm attendant to an *improper* grant or denial because there is no "harm,"

at least as that term is used in the realm of equity and equitable relief,

where a party is restrained from doing that which it may properly be

restrained from doing, or where the court refuses to restrain a party from

doing that which it may properly do.

## III. ANALYSIS

### A. Harm to Plaintiff and Defendant

The Court's first consideration is the harm flowing to each party from

an improper grant or denial of the motion for preliminary injunction.

Plaintiff avers that it will suffer irreparable harm in the form of losses of

goodwill, reputation and future business if Defendant changes the signs at

Fairfield Mountains. Plaintiff asserts that this harm will result from the

confusion its customers will face in attempting to locate and check into

their vacation destination due to signage bearing a completely different

name.  **Plaintiff's Motion, ¶ 12; Plaintiff's Memorandum, at 10-13.**

Damages such as the loss of goodwill and harm to reputation are

recognized as "irreparable harms."  ***See, Multi-Channel TV Cable Co. v.***

***Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4ᵗʰ Cir.**

**1994).**  Furthermore, while the extent of the harm from Defendant's

changing of the signs may not be extremely large, the ultimate extent of the

damage is not the issue before the Court.  ***See, Blackwelder Furniture***

***Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 196-97 (4ᵗʰ Cir. 1977).**  The

Court finds that Plaintiff is likely to suffer immediate,[5] irreparable harm if

the Court erroneously denies Plaintiff's request for a preliminary injunction.

    Defendant asserts that it, too, faces irreparable harm.  According to

Defendant, it "plans on unveiling the new name of the resort with a

celebration" and that if all of the signs do not bear the new name "[p]eople

arriving for the first time to the newly named resort will be confused and

---

[5] Defendant, as it did in arguing against Plaintiff's June Motion, has asserted that this Court cannot issue preliminary injunctive relief because "no harm has occurred."  **Defendant's Memorandum, at 1.**  Defendant is again reminded that a party seeking injunctive relief is not required to wait until the harm has actually occurred to seek relief.  It is the "present *threat* of irreparable harm" that this Court must consider.  ***Direx Israel, supra*, at 816; *see also*, *Fairfield Resorts, Inc.*, 2006 WL 1889152, at *5 (wherein this Court, two months ago, addressed and rejected this very same argument).**

discouraged ultimately causing damage to the newly formed name and brand the association is marketing." **Defendant's Memorandum, at 11.** Defendant argues that "[t]his loss cannot be calculated[ because] [i]t is based on the public impression and is therefore irreparable if disturbed." *Id.* Although Defendant cites no legal authority in support of its position,[6] the Court finds that Defendant faces irreparable harm from an erroneously-granted preliminary injunction. *See, e.g., Multi-Channel TV Cable Co., supra.* However, the Court finds that the degree of irreparable harm is tempered by (1) the fact that the name of the resort has been changed in the past without the mass changing of signage and no evidence of irreparable harm from such event was presented to the Court, and (2) the fact that the name change was approved eight months ago yet none of this behavior began until two weeks after this Court blocked Defendant's previous attempt to unilaterally re-interpret part of the long-standing

---

[6] The Court would note that in its 13-page memorandum of law, Defendant cites only three sources of law with each source cited only once, leaving numerous – in fact, nearly all – of Defendant's legal arguments and assertions completely unsupported. *See generally,* **Defendant's Memorandum.** A memorandum of law that is substantially devoid of any law "unfairly and unreasonably shift[s] the burden of articulating [Defendant's] arguments to the party opposing the motion or to the court[,]" and is not an appropriate practice. *Toner v. United Bhd. of Carpenters*, **1999 WL 178784, at \*1 (S.D.N.Y. 1999).**

Settlement Agreement.

Having considered the possible irreparable harm to both Plaintiff and Defendant, the Court finds that the likelihood of harm to Plaintiff slightly outweighs the likelihood of harm to Defendant.

**B. Likelihood of Success on the Merits**

The second consideration for the Court is Plaintiff's likelihood of success on the merits. Having found that the balance of hardships is substantially equal, although tipping slightly in Plaintiff's favor, Plaintiff must demonstrate a "clear showing of a likelihood of success." ***Scotts Co.*, 315 F.3d at 271; *see also*, *Gilliam v. Foster*, 61 F.3d 1070, 1078 n.5 (4th Cir. 1995).** The Court finds that Plaintiff has satisfied its burden of establishing a strong likelihood of succeeding on the merits of this dispute.

Plaintiff has presented documents tending to establish that the disputed signage provision was part of the parties' Settlement Agreement reached in December 1992. **See, Plaintiff's Motion; Plaintiff's Memorandum; Settlement Agreement.** Such document provision grants Plaintiff the exclusive right to take certain actions in regards to signage at Fairfield Mountains. **See, Settlement Agreement.** Further, Plaintiff has

presented evidence indicating that it has satisfied the condition necessary to retain such right, to wit, that it currently employs persons in sales and management at Fairfield Mountains.  **See, Exhibit C, Affidavit of Michael Duncan, dated August 18, 2006, *attached to* Plaintiff's Memorandum; Settlement Agreement; Plaintiff's Motion, ¶ 4.**  Consequently, it appears that Plaintiff stands a strong likelihood of succeeding on its assertion that the actions threatened by Defendant in the July 27, 2006, letter by Mr. Cain are in contravention of the Settlement Agreement.

In response, Defendant has presented three arguments disputing Plaintiff's likelihood of success in this matter: (1) the page containing the language regarding the right to alter signs at Fairfield Mountains should not be considered part of the Settlement Agreement; (2) if such language is considered a part thereof, the term relating to signage is unconscionable and should not be enforced; and (3) the term is not enforceable due to a lack of consideration.

First, while Defendant makes numerous abstract legal arguments regarding contracts and contract interpretation, noticeably absent from its filings is a contention that the terms *actually* were not agreed to by Defendant at the time the Settlement Agreement was reached.  ***See,***

**Defendant's Memorandum.**  There is no assertion that the page on which the disputed term appears was newly-created by Plaintiff, no assertion that the terms contained therein were foreign to Defendant, no assertion that Defendant had no knowledge of the document or its terms at the time of agreement, and, most importantly, no assertion that the retained right regarding signage was not, in fact, an agreed-upon term of the bargain struck by Plaintiff and Defendant in 1992.  *See, id.*  If Defendant knew that the term was part of the Settlement Agreement at the time it signed the Agreement and agreed to such term, general rules regarding contract interpretation or presumptions based on the location of a term in a document are irrelevant.

Furthermore, *the very same documents* that Defendant now argues should not be considered as part of the Settlement Agreement were submitted as exhibits to Plaintiff's Complaint and in conjunction with Plaintiff's June Motion.  *See***, Exhibit A,** *attached* **to Plaintiff's Complaint, filed June 20, 2006; Exhibit A,** *attached* **to Plaintiff's June Motion, filed June 21, 2006.**  Yet, the Defendant raised no objection to the inclusion of such documents at either time and actually cited to the exhibit in its entirety in both its Answer and in its memorandum in response

to Plaintiff's June Motion, referring to the entire exhibit as the "Settlement Agreement." **See, Answer and Counterclaim, ¶ 37; Defendant Fairfield Mountains Property Owners Association, Inc.'s Memorandum in Opposition to Motion for Preliminary Injunction, filed June 29, 2006, at 3.** Only now does the argument appear that a document *Defendant* was calling a part of the Settlement Agreement is actually not a part of the Agreement. The Court finds that Plaintiff is likely to succeed on its assertion that the disputed language regarding signage is part of the Settlement Agreement.

As to Defendant's second contention, "[u]nconscionability is an affirmative defense and the party asserting the defense bears the burden of proof." *Tillman v. Commer. Credit Loans, Inc.*, **629 S.E.2d 865, 869 (N.C. App. 2006)**. Furthermore, the threshold necessary to avoid a contract or a contract provision on the basis of unconscionability is exceedingly high. *See*, *Brenner v. Little Red School House, Ltd.*, **302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981) (discussing the unconscionability standard).** Defendant has not made a showing that it is likely to succeed on its affirmative defense, and the Court finds such defense insufficient to preclude a finding that Plaintiff is likely to succeed

on the merits of its claim.

Finally, Defendant's argument regarding consideration is similarly unavailing.  The Court has found that Plaintiff is likely to prevail on its contention that the term regarding signage is part of the Settlement Agreement reached between Plaintiff and Defendant in December 1992, and Defendant has cited no authority for its argument that a contract term that is part of a larger agreement fails for want of consideration simply because no recital of consideration appears on the exact same page as the term in question.  *See*, **Defendant's Memorandum, at 9.**

The Court finds that Plaintiff has presented a strong likelihood of success on the merits of its claim that the Settlement Agreement, executed by Plaintiff and Defendant in December 1992, affords Plaintiff the exclusive right to take certain actions in regards to signage located at Fairfield Mountains, and that actions by Defendant in contravention of such right, including those threatened in the July 27 Letter, would be in violation of the Settlement Agreement.


**C. Public Interest**

The final consideration for the Court is the public interest.  To the

extent the public interest is implicated in this matter, the Court finds that the public interest weighs in favor of preserving the status quo pending a determination of the parties' respective rights.

**D. Balancing Test**

Having taken account of each of the four parts of the "hardship balancing" test used in this Circuit for deciding questions regarding preliminary injunctive relief, the Court finds issuance of a preliminary injunction to be an appropriate measure.  Therefore, Defendant will be enjoined, pending further Order of this Court, from removing, replacing or altering in any way existing signage at Fairfield Mountains.  Defendant will be further ordered to immediately restore to their previous locations any signs that have been removed, replaced or altered while awaiting the Court's decision on this motion.

Finally, Rule 65(c) requires the Court to set a bond upon issuance of preliminary injunctive relief.  While the giving of security is mandatory, the amount thereof is left to the sound discretion of the Court.  ***See*, Fed. R. Civ. P. 65(c) (mandating that the court require "the giving of security by the applicant" before granting a preliminary injunction or**

temporary restraining order); ***see also***, ***Maryland Dep't of Human Resources v. United States Dep't of Agriculture.***, 976 F.2d 1462, 1483 (4th Cir. 1992) (noting that while "the decision whether to require a bond is strictly circumscribed by the terms of Rule 65(c)[,]" the amount of the bond is within the discretion of the trial court).  The Court finds that the $50,000 bond required by this Court's July 7, 2006, Memorandum and Order, and posted by Plaintiff on July 14, 2006, is sufficient to cover the potential further grounds for relief contained herein.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion for preliminary injunction is **GRANTED**; the terms of such injunction shall be set forth in a separate order filed contemporaneously herewith.

**IT IS FURTHER ORDERED** that the parties meet and confer as provided by Fed. R. Civ. P. 26(f) and Rule 16.1 of this Court's Local Rules and submit a proposed discovery plan within 15 days from entry of this Memorandum and Order.  If the parties are unable to agree on the terms thereof, they shall so inform the Court, and the Court will enter a pretrial

order and case management order binding on the parties.

Signed: August 29, 2006

Lacy H. Thornburg
United States District Judge