**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

**CIVIL NO. 1:06CV191**

| | | |
|---|---|---|
| **FAIRFIELD RESORTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **FAIRFIELD MOUNTAINS PROPERTY** | ) | |
| **OWNERS ASSOCIATION, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Plaintiff's motion for

preliminary injunction and motion for leave to amend its complaint, as well

as the parties' joint motion to extend the discovery deadline.  This is

Plaintiff's third motion for preliminary injunctive relief in this litigation,

having succeeded twice before in obtaining the requested injunctive relief.

*See* **Order, filed July 7, 2006; Order, filed August 29, 2006.**  This is also

Plaintiff's second motion for leave to amend its complaint, having been

allowed to do so by Order filed September 18, 2006.  Both sides have

responded with their respective positions on the present motions, and the

matters are now ripe for ruling.

## I. PROCEDURAL HISTORY

The facts and procedural history of this case have been previously summarized by this Court at length.  ***See* Memorandum and Order, filed June 28, 2006, at 1-2 (denying Defendant's motion to dismiss); Memorandum and Order, filed July 7, 2006, at 1-6 (granting Plaintiff's first motion for preliminary injunction); Memorandum and Order, filed August 29, 2006, at 1-5 (granting Plaintiff's second motion for preliminary injunction).**  Accordingly, only the facts pertinent to resolution of the present issues will be recited by the Court.

In 1992, Plaintiff Fairfield Resorts, Inc. ("Plaintiff" or "Fairfield") and Defendant Fairfield Mountains Property Owners Association, Inc. ("Defendant" or "POA") entered into a settlement agreement ("the Settlement Agreement") to resolve certain claims Defendant held against Plaintiff in its bankruptcy proceeding.  ***See* Complaint, filed June 20, 2006, at 2-3; Exhibit A, Settlement Agreement, *attached to* Complaint.**  In the Settlement Agreement, Plaintiff conveyed certain property to Defendant referred to generally as "the Amenities Property" or "the Amenities," which consisted of a recreation center, a sales building, and certain commercial property, among other properties.  **Settlement**

**Agreement, at 1.**  In return, Defendant agreed to a number of conditions being placed on the Amenities Property, such as allowing "Fairfield's Guests" access to the Amenities Property, including the recreation center, and prohibiting the use of the Amenities Property by competitors of Fairfield for real estate sales and development.  *Id.* **at §§ 5(c), 8.**

At issue in this third motion for preliminary injunctive relief are allegations by Plaintiff against Defendant of defamation and allowing prohibited persons access to the Amenities Property in violation of the Settlement Agreement.  Specifically, Plaintiff requests the Court to enjoin the Defendant from, "(i) allowing the Amenities Property to be used [by competitors of Fairfield] for real estate sales or real estate development . . ., (ii) denying Fairfield employees and guests access to and use of the Amenities Property, including the recreation center . . . , and (iii) making slanderous statements concerning Fairfield's business, including statements that Fairfield no longer has any association with the Resort or that Fairfield is bankrupt[.]"  **Plaintiff's Motion for Preliminary Injunction, filed November 17, 2006, at 6.**  Plaintiff also moves to amend its complaint a second time to add claims resulting from the aforementioned allegations against Defendant.  **Plaintiff's Second Motion for Leave to**

**Amend Complaint, filed November 17, 2006.**  Specifically, Plaintiff wishes to add claims of slander *per se*, unfair and deceptive trade practices, breach of contract, intentional interference with prospective economic advantage, and punitive damages to its complaint, as well as request permanent injunctive relief in the manner described above in Plaintiff's motion for preliminary injunction.  *Id.* **at 2-3; Plaintiff's Proposed Second Amended Complaint,** *attached to* **Plaintiff's Motion for Leave to Amend Complaint, filed November 17, 2006, at 16-17.**  Additionally, the parties have filed a joint motion to extend the discovery deadline and certain other pretrial deadlines.  *See* **Joint Motion to Extend Discovery Deadlines, filed January 18, 2007.**  The period for discovery is currently set to close on February 1, 2007, with trial commencing in July 2007. **Pretrial Order and Case Management Plan, filed September 15, 2006, at 1.**  The parties have briefed their respective positions and filed supporting affidavits and documentation on these motions.

## II. STANDARD

### A.  *Preliminary Injunction*

The decision to grant or deny interim injunctive relief is within the

sound discretion of the district court.  ***See Hughes Network Sys. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994).**  "Granting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way.  The danger of a mistake in this setting is substantial."  ***Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) (citations and internal quotations omitted).**  As such, a preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it."  ***Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1992) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)).**  "Whenever the extraordinary writ of injunction is granted, it should be tailored to restrain no more than what is reasonably required to accomplish its ends. Particularly is this so when preliminary relief, on something less than a full record and full resolution of the facts, is granted."  ***Consolidation Coal Co. v. Disabled Miners of S. W. Va.*, 442 F.2d 1261, 1267 (4th Cir. 1971); *see also Anheuser-Busch, Inc. v. Stroh Brewery Co.*, 750 F.2d 631, 653 (8th Cir. 1984) ("Injunctions must be tailored narrowly to remedy the**

**specific harm shown rather than to enjoin all possible breaches of the law.").**

The Court applies a four-part balancing test to determine whether interim injunctive relief should issue.  ***Direx Israel*, *supra*.**  Under this balancing test, the Court must consider "'(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.'"[1] ***Willis v. Town of Marshall*, 426 F.3d 251, 267 (4th Cir. 2005) (quoting *Direx Israel*, at 812); *see also Wetzel v. Edwards*, 635 F.2d 283, 287 (4th Cir. 1980).**  Although no one factor is generally dispositive,[2] the two most important are "probable irreparable injury to the plaintiff if an injunction is not issued and likely harm to the defendant if an injunction is

---

[1] The Court is also guided by Fed. R. Civ. P. 65 which governs the procedural requirements attendant to the granting of injunctive relief.  **Fed. R. Civ. P. 65; *see also Maryland Dep't of Human Resources v. United States Dep't of Agriculture*, 976 F.2d 1462, 1483 (4th Cir. 1992).**

[2] A failure to show any risk of irreparable harm is sufficient grounds for denial of a motion for interim injunctive relief, as likelihood of success on the merits alone – without any showing of a risk of irreparable harm – is not sufficient to warrant the issuance of a preliminary injunction.  ***See Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).**

issued." *Id.*

> When deciding whether to grant a preliminary injunction, the
> court must first determine whether the plaintiff has made a
> strong showing of irreparable harm if the injunction is denied; if
> such a showing is made, the court must then balance the
> likelihood of harm to the plaintiff against the likelihood of harm
> to the defendant.  If the balance of the hardships tips decidedly
> in favor of the plaintiff, then typically it will be enough that the
> plaintiff has raised questions going to the merits so serious,
> substantial, difficult, and doubtful, as to make them fair ground
> for litigation and thus for more deliberate investigation.  But if
> the balance of hardships is substantially equal as between the
> plaintiff and defendant, then the probability of success begins
> to assume real significance, and interim relief is more likely to
> require a clear showing of a likelihood of success.

*Scotts Co.*, 315 F.3d at 271 **(internal quotations and citations omitted).**

Thus, as a threshold matter, "[t]he plaintiff must make a 'clear showing of

irreparable harm . . . , *and the required irreparable harm must be neither*

*remote nor speculative, but actual and imminent.*'" *Id.* **at 283 (quoting**

*Direx Israel*, 952 F.2d at 812) (emphasis added).**  When considering the

harm to the parties flowing from the issuance or non-issuance of the

requested preliminary injunction, the real issue for the Court's

consideration is the level of harm resulting from the improper grant or

denial of the petitioner's request.  *Id.* **at 284.**

> "If the judge grants the preliminary injunction to a plaintiff who it
> later turns out is not entitled to any judicial relief – whose legal
> rights have not been violated – the judge commits a mistake

whose gravity is measured by the irreparable harm, if any, that the injunction causes to the defendant while it is in effect. If the judge denies the preliminary injunction to a plaintiff who it later turns out is entitled to judicial relief, the judge commits a mistake whose gravity is measured by the irreparable harm, if any, that the denial of the preliminary injunction does to the plaintiff."

*Id.* **at 284-85 (quoting** *American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, **780 F.2d 589, 593 (7th Cir. 1986)).** The Court focuses on the harm attendant to an improper grant or denial because there is no "harm," at least as that term is used in the realm of equity and equitable relief, where a party is restrained from doing that which it may properly be restrained from doing, or where the court refuses to restrain a party from doing that which it may properly do.

## B.    Amendment of Complaint

Federal Rule of Civil Procedure 15(a) states "leave [to amend a complaint] shall be freely given when justice so requires." **Fed. R. Civ. P. 15(a).** The United States Supreme Court has held that Rule 15's "mandate is to be heeded[,]" and further explained,

[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue

> delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice to the opposing party by virtue of allowance of the amendment*, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

***Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).**  The Fourth Circuit Court of Appeals, in applying *Foman*, has noted, "[u]nder this standard prejudice resulting to the opponent by a grant of leave to amend is reason sufficient to deny amendment."  ***Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).**   The Fourth Circuit has also stated, "[a] change in the theory of recovery may obviously sometimes cause substantial prejudice to a defendant, justifying denial of a motion to amend to assert that theory.  But the fact that an amendment changes the plaintiff's theory of the case will not suffice as a reason for denial absent a showing of prejudice . . . ."  ***Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987).**  Finally, "[a] motion to amend under Rule 15(a) may be denied where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant."  ***Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) (citing *Davis, supra*).**  In evaluating whether a party is prejudiced by a late-filed motion to amend, "the court should evaluate the position of both parties.

This evaluation 'entails an inquiry into the hardship to the moving party if leave to amend is denied . . . and the injustice resulting to the party opposing the motion should it be granted.'" ***Forstmann v. Culp*, 114 F.R.D. 83, 87 (M.D.N.C. 1987) (internal citations omitted).**

## III. ANALYSIS

### A.  *Preliminary Injunction*

#### 1.  Harm to Plaintiff and Defendant

Plaintiff requests this Court enjoin Defendant from "(i) allowing the Amenities Property to be used for real estate sales or real estate development . . . , (ii) denying Fairfield employees and guests access to and use of the Amenities Property, including the recreation center . . . , and (iii) making slanderous statements concerning Fairfield's business, including statements that Fairfield no longer has any association with the Resort or that Fairfield is bankrupt[.]"  **Plaintiff's Motion for Preliminary Injunction, at 6.**  As stated above, it is Plaintiff's burden to "make a 'clear showing of irreparable harm . . . , and the required irreparable harm must be neither remote nor speculative, but actual and imminent.'" ***Scotts Co.*, 315 F.3d at 283 (quoting *Direx Israel*, 952 F.2d at 812).**  Furthermore,

"[a]s a general rule, a preliminary injunction should not issue on the basis of affidavits alone. Moreover, a district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff." ***Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1575 (Fed. Cir. 1990) (internal citations omitted).** After reviewing the record, albeit an incomplete record at this point in the litigation, the undersigned is simply not convinced that Plaintiff is faced with actual and imminent irreparable harm under the circumstances alleged here. Generally speaking, Plaintiff's case is simply not yet ripe, as Plaintiff bases its motion upon pure speculation and information gained through word of mouth rather than direct observation or documentation. Nevertheless, the Court will address each of Plaintiff's three specific requests in turn.

### *i. Competitors' Facilities Usage*

Plaintiff's first request to enjoin Defendant from allowing the Amenities to be used for real estate sales and/or development is based upon the affidavit of Michael Duncan, Area Vice President of Sales for Fairfield Resorts, Inc. **Affidavit of Michael Duncan, filed December 11, 2006, ¶ 1.** Duncan avers that Defendant "has permitted competitors of

Fairfield to make presentations regarding real estate opportunities to resort guests during breakfast meetings at the resort," and that Defendant "is considering a partnership with a real estate developer for a real estate sales and development venture. . . . [Defendant] intends to allow the developer to build a sales and operation center on property conveyed to [Defendant] under the terms of the Settlement Agreement." *Id.* ¶¶ **8, 11.** Duncan alleges these actions by Defendant violate the Settlement Agreement existing between the two parties which prohibits Defendant from using the property acquired from Plaintiff for the purpose of real estate sales that compete with Plaintiff's real estate ventures. *Id.* ¶ **9.** Plaintiff does not include affidavits of individuals who actually saw or attended these meetings, nor does Plaintiff provide documentation evidencing the existence of these meetings or the alleged development plans.

Defendant, however, counters these allegations with an affidavit from James Cain, Membership Services Manager for Defendant, who assures the Court that any presentations, referred to as "Welcome Coffees," held on the property in question dealt only with "recreational activities" such as "fly fishing excursions" and were held only to inform Resort members and

guests of the available activities in the area.  **Affidavit of James Cain,**

**filed December 19, 2006, ¶ 10.**  Cain further avers that Defendant has

allowed local businesses to meet on the property to discuss plans to attract

more business to the area, but such discussions did not concern real

estate sales or development.  *Id.* **¶ 11.**  Finally, Cain refutes Duncan's

claim that Defendant "intends to allow [a] developer to build a sales and

operation center on property conveyed to [Defendant] under the terms of

the Settlement Agreement" by stating such an idea was expressly refused

by Defendant.  *Id.* **¶ 13.**  According to Cain, the only discussions that have

taken place which might violate the Settlement Agreement concern

property outside the Resort area, and are purely exploratory to determine

what actions Defendant can legally take under the Settlement Agreement.

*Id.* **¶ 12.**  Other than the aforementioned activities, Cain assures the Court

that no presentations or meetings have taken place that would violate the

Settlement Agreement.  *Id.* **¶ 6 ("If such presentations had been made,**

**it would likely have come to my attention in the course of executing**

**my job duties.").**

Considering the materials presented to the Court regarding Plaintiff's

third injunction request, the undersigned finds Plaintiff has not carried its

burden of demonstrating actual and imminent irreparable harm. Plaintiff's injunction is based purely on hearsay and speculation by Duncan which is insufficient to establish Plaintiff's need for an injunction. ***See Atari Games Corp.*, 897 F.2d at 1575.** Furthermore, Defendant has provided the Court with a satisfactory explanation of the issues raised by Duncan's affidavit, and granting the requested injunction would undoubtedly harm Defendant by prohibiting it from conducting potentially valid exploratory meetings and recreational presentations for its guests on the property. While such exploratory meetings may eventually become actionable, without evaluating or ruling on the language contained in the non-compete clause of the Settlement Agreement, the Court finds that the steps taken by Defendant in this regard simply have not yet created actual and imminent irreparable harm to Plaintiff. If, as Plaintiff alleges, Defendant continues to act in a manner that violates the Settlement Agreement, Plaintiff may find itself with a more solid foundation on which to base its claim for an injunction or separate lawsuit against Defendant at a later point. However, were the Court to grant an injunction at this point, the Court would merely be protecting Defendant from itself – an action this Court refuses to take. Because Plaintiff has failed to demonstrate actual and imminent irreparable

harm suffered as a result of Defendant's alleged presentation activities, and because granting the injunction would harm Defendant, Plaintiff's request to enjoin Defendant from holding presentations on the property will be denied.

### *ii. Employee/Guest Facilities Usage*

Plaintiff also requests the Court to enjoin Defendant from refusing access to the Amenities property, including the recreational center, for Plaintiff's employees and guests. Plaintiff's evidence on this issue is similarly defective due to its failure to establish actual and imminent irreparable harm. With this request, Plaintiff submits the affidavits of David Nelon and Deborah Bennick, two employees of Plaintiff who claim to have been denied access to the recreational facility operated by Defendant in violation of the Settlement Agreement. **Affidavit of David Nelon, filed November 17, 2006, ¶¶ 3-4; Affidavit of Deborah Bennick, filed November 17, 2006, ¶¶ 4-8.** Additionally, Michael Duncan states in his affidavit that he, too, has heard of Fairfield employees and guests being denied access to the Amenities Property, though he has not actually witnessed such restricted access. **Duncan Affidavit, ¶¶ 4-5.**

Defendant counters Plaintiff's evidence with affidavits from Dennis Buckner, Defendant 's Chief Financial Officer, and Joel Boueres, Defendant's Director of Recreation for the POA. **Affidavit of Dennis Buckner, filed December 19, 2006, ¶ 1; Affidavit of Joel Boueres, filed December 19, 2006, ¶ 2.** Both Buckner and Boueres spoke with Nelon and Bennick, respectively, when they were allegedly denied access to the POA's facilities. While both Nelon and Bennick allege they were denied access to the recreational center outright by Defendant's employees, both Buckner and Boueres state these individuals were denied access because they did not present proper access cards, which are required of all members, including Defendant's employees, for use of the facilities. **Buckner Affidavit, ¶ 13; Boueres Affidavit, ¶ 4.** To corroborate this explanation, Nelon specifically states in his affidavit that he was told by Boueres that he "was not permitted on the premises without a guest or member card." **Nelon Affidavit, ¶ 3.** Further, while Bennick states she was denied access to the recreation center and voluntarily left to avoid further embarrassment, Boueres asserts that Bennick was not, in fact, denied access, but instead actually used the recreational center equipment

on the day in question.  **Bennick Affidavit, ¶¶ 4-8, 11-12; Boueres Affidavit, ¶ 5.**

Although there appears to be conflicting accounts of the events and what was communicated between employees of Plaintiff and of Defendant in regard to individual use of the recreational facility, it is clear to the undersigned that Plaintiff has again failed to demonstrate actual and imminent irreparable harm.  Reviewing the record, it is unknown whether Plaintiff is suffering actual harm by being denied rightful access to the recreational facilities for arbitrary and adversarial reasons, or whether Plaintiff's employees are being denied access simply because they are not following the reasonable requirement of showing an access card. Furthermore, Defendant's supporting affidavits clearly state that individuals with valid access cards will not be denied access to the facilities, thus providing this Court with no substantial reason to fear for Plaintiff's employees' continued exercise of their rights to access the facilities. **Boueres Affidavit, ¶¶ 4, 6; Buckner Affidavit, ¶ 13.**

The undersigned also notes that both parties argue extensively about the alleged rights retained by the parties under the terms of the Settlement Agreement and allege the opposing party is disregarding the terms therein.

**Plaintiff's Memorandum in Support of Motion for Preliminary Injunction, ¶¶ 5-8, 11; Defendant's Memorandum Opposing Plaintiff's Third Motion for Preliminary Injunction, filed December 19, 2006, ¶¶ 11-13; Buckner Affidavit, ¶¶ 9-13.** However, any further analysis upon this matter would essentially require this Court to issue a declaratory judgment on these particular rights reserved to the parties under the Settlement Agreement. The Court refuses to take such action until the parties have attempted to resolve the issue and, as last resort, properly submit it to the Court.

Accordingly, as Plaintiff has failed to demonstrate actual and imminent irreparable harm regarding the alleged denial of its employees' access to the Amenities facilities, particularly the recreational center, Plaintiff's motion for preliminary injunction on this issue will also be denied.

### iii. Slander

Plaintiff's final request for injunctive relief is to prevent Defendant from "making defamatory statements concerning Fairfield's business, including statements that Fairfield no longer has any association with the Resort and that Fairfield is bankrupt." **Plaintiff's Motion for Preliminary**

**Injunction, ¶¶ 1-2.**  Plaintiff alleges that such statements have harmed its "goodwill and reputation . . . [and] may also result in a loss of potential business for Fairfield."  *Id.* ¶ 2.

Plaintiff again relies upon the affidavits of Michael Duncan and David Nelon, who allege they have been told by guests that certain persons have claimed Plaintiff is bankrupt and no longer affiliated with the Resort.

**Duncan Affidavit, ¶ 6; Nelon Affidavit, ¶¶ 6-9.**  While Duncan does not assert any particular names of the individuals making these allegedly defamatory remarks, Nelon specifically states that employees of Vacation Resorts International (VRI) and an alleged boat tour guide (named "Mr. Gunter") employed by Defendant have told guests that Plaintiff is bankrupt and/or is no longer affiliated with the Resort.  **Nelon Affidavit, ¶¶ 6, 8-9.** Defendant counters these assertions by noting that VRI is not owned or controlled by Defendant, and therefore, it "has no knowledge of any such statements being made by VRI . . . as alleged by [Plaintiff]."  **Buckner Affidavit, ¶ 4.**  Furthermore, Buckner avers that he has searched Defendant's employee records from 2003 through 2006 and did not find an employee by the name of "Gunter" or an employee whose name has a

similar spelling. ***Id.*** **¶ 3;** ***see also*****, Exhibit A, Employee Name Database,**
***attached to*** **Buckner Affidavit.**

To begin, this Court notes "[a]ny prior restraint on expression comes
to this Court with a 'heavy presumption' against its constitutional validity.
[Plaintiff] thus carries a heavy burden of showing justification for the
imposition of such a restraint." ***Nebraska Press Ass'n v. Stuart*****, 427 U.S.**
**539, 558 (1976) (internal citations omitted).** After reviewing the record, it
is clear to the undersigned that again Plaintiff has not only failed to carry its
burden of demonstrating actual and imminent irreparable harm on the part
of Defendant, but also failed to carry the heavy burden of justifying such
prior restraint. Plaintiff's accusations are based upon speculation and
vague hearsay, and Plaintiff has failed to show how any confusion created
by the alleged statements has manifested itself in the form of actual and
imminent irreparable harm. Furthermore, Plaintiff's allegations are brought
against either unidentifiable persons or persons not associated or within
the control of Defendant. Assuming *arguendo* the Court found the alleged
statements actually and imminently harmful, Plaintiff has failed to provide a
party for the Court to enjoin. Accordingly, as Plaintiff has failed to
demonstrate actual and imminent harm and to attribute such alleged harm

to Defendant, this Court will deny Plaintiff's request to enjoin Defendant from making defamatory statements. *See Atari Games Corp.*, **897 F.2d at 1575.**

As a final point, the Court notes that Plaintiff's current requests for preliminary injunctions have been brought with such minimal foundation as to offend the character and function of this Court. Because an injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it," Plaintiff must provide clear and substantial evidence of actual and imminent irreparable harm upon which this Court may base its grant of such an incredible writ, a task which Plaintiff has failed to accomplish in the current and previous motions. *Direx Israel*, **952 F.2d at 811.** Both parties are hereby directed to resolve future similar trivial disputes themselves and not involve the Court in such persistent "tattling" or the Court will consider sanctions upon the appropriate party pursuant to 28 U.S.C. § 1927 and/or Federal Rule of Civil Procedure 11.

**B.    *Motion to Amend***

Plaintiff now seeks a second amendment to its complaint "in order to state additional claims of slander *per se*, unfair and deceptive trade practices [under N.C. Gen. Stat. 75-1.1], breach of contract, [intentional interference with prospective economic advantage,] and punitive damages[.]"  **Plaintiff's Motion for Leave to Amend Complaint, filed November 17, 2006, at 2;** *see also***, Proposed Second Amended Complaint,** *attached to* **Plaintiff's Motion for Leave to Amend, at 16-17.** Plaintiff also seeks permanent injunctive relief in the manner stated in its motion for preliminary injunction.  **Plaintiff's Motion for Leave to Amend, at 2-3.**

Though Plaintiff initially filed this motion to amend on November 17, 2006, which would ordinarily require a response from Defendant by December 4, 2006, Plaintiff twice consented to an extension of the response deadline, pushing the deadline back until December 19, 2006. *See* **Consent Motion for Extension of Time to File Response as to Second Motion to Amend Complaint, filed November 30, 2006 ("First Consent Motion"); Consent Motion for Extension of Time to File Response as to Second Motion to Amend Complaint, filed December**

**12, 2006 ("Second Consent Motion").**  The reasons for the extensions were Defendant's hiring of new counsel and Plaintiff's failure to correctly file an affidavit necessary for response to Plaintiff's motions, respectively. **First Consent Motion, at 1; Second Consent Motion, at 1.**  This Court granted both motions for extension of time, and Defendant responded to the respective motions on December 19, 2006.  Thus, the delay in setting this matter before the Court falls squarely on the shoulders of both parties.

Considering the claims Plaintiff intends to add to its complaint, specifically the different remedy Plaintiff seeks in the proposed amendments, as well as the short amount of time remaining for the parties to conduct discovery, the Court believes Defendant will be unfairly prejudiced by allowing Plaintiff to amend its complaint.  Plaintiff initiated this lawsuit seeking declaratory and injunctive relief, and has since added an additional claim seeking the same remedy, with both claims falling on narrow grounds.  **Complaint, at 9-10; Amended Complaint, at 12-13.** With this second motion to amend, Plaintiff proposes to nearly triple its claims for relief by adding five state law claims for damages and requesting further injunctive relief, all of which are based entirely on new allegations, and most of which are based upon a vague accusation of Defendant

making defamatory statements as addressed *supra*.  Were this Court to allow Plaintiff to amend its complaint at this late point in the lawsuit, Defendant would have less than one month to conduct extensive fact-specific discovery on entirely new allegations which are largely restricted to witness testimony, a task vastly different from the discovery it has likely been conducting on the narrow declaratory judgment issues up to this point.

As the Court has no intention of extending the discovery deadline, allowing this amendment with such little time for Defendant to conduct discovery on new state law claims for damages and further injunctive relief would put Defendant at a severe disadvantage.  Plaintiff will possibly suffer some form of prejudice by the denial of this motion in the form of having to file an additional lawsuit on these separate claims.  However, although the general rule is to freely allow motions to amend, the undersigned feels the prejudice Defendant will suffer in allowing such a motion far outweighs any prejudice suffered by Plaintiff in denying the motion.  Accordingly, as "prejudice resulting to the opponent by a grant of leave to amend is reason sufficient to deny amendment," Plaintiff's motion to amend will also be denied.  ***Davis*, 615 F.2d at 613.**

**C.** *Joint Motion to Extend the Discovery Deadlines*

The parties have filed a joint motion to extend certain pretrial deadlines, including the deadline for completion of discovery, mediation, and filing of motions. *See* **Joint Motion to Extend Discovery Deadlines, filed January 18, 2007, at 2.** As stated in the previous section, the Court has no intention to extend the discovery deadlines for this case. If the parties wish to participate in consensual discovery beyond the Court's deadline for discovery, they may do so. However, the Court will not grant the requested extensions and further delay this case. All deadlines established by the Pretrial Order and Case Management Plan remain in effect. *See* **Pretrial Order and Case Management Plan, filed September 15, 2006.**

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Second Motion for Leave to Amend Complaint is **DENIED.**

**IT IS FURTHER ORDERED** that the parties' Joint Motion to Extend

Discovery Deadlines is **DENIED.**

Signed: January 19, 2007

Lacy H. Thornburg
United States District Judge